EXHIBIT "A"

# PIN-Based Transaction Processing and Support Agreement

AGREEMENT between Indian River Merchant Services LLC, or its designee and/or assignee herein known as "IRMS LLC," and EFT Services LLC, an Independent Sales Representative herein known as "ISR."

## RECITALS

WHEREAS, IRMS LLC, provides access to processing, bank sponsorship, settlement and/or customer services to merchants, banks and Independent Sales Representatives (ISRs) in connection with the terminals and transaction types that are subject to this agreement, which merchants are identified either in a data file supplied by ISR contemporaneously with this agreement or in an exhibit to this agreement entitled "Description of Locations" and which are all contained in the database program that has been provided by IRMS LLC to ISR into which program the ISR has correctly input all data related to his/her/its locations and terminals for the purpose of registration of said terminals and locations; and

WHEREAS, ISR, is principally a sales and support organization, responsible for managing and supporting its clients, including settling all financial and settlement obligations of its clients. The ISR provides and shall continue to provide marketing, sales and support to merchants who are or will become members of one or more banking network systems in connection with the terminals and transaction types that are subject to this agreement, which merchants are identified in an Exhibit to this agreement entitled "Description of Locations" and which are all contained in the database program that has been provided by IRMS LLC to ISR into which program, the ISR has correctly input all data related to his/her/its locations and terminals for the purpose of registration of said terminals and locations; and

WHERAS, IRMS, LLC and ISR are completely and entirely separate entities operating their respective separate businesses, and own their respective and separate assets. Neither party has any claim upon the other party for any intellectual property, software licenses, or financial, technical, infrastructure or personnel resources.

WHEREAS, ISR has complied and registered with appropriate networks for access to those networks for transaction processing, or will provide such documentation as is necessary to comply with reasonable requirements of the Sponsor Bank of IRMS LLC or ISR, and

WHEREAS, the Description of Locations" shall be amended from time to time by the registration or deletion of terminal locations, and

WHEREAS, IRMS LLC, and ISR desire to enter into an agreement whereby IRMS LLC will provide Electronic Funds Transfer (EFT) services for ISRs programs and equipment as necessary to enable various terminals to operate as described in a data file or an Exhibit to this Agreement entitled "Description of Terminals", and

WHEREAS ISR agrees to exercise due diligence and care in the implementation of the provisions of this agreement;

NOW THEREFORE, in consideration of the foregoing, and for mutual promises and premises set forth herein, the parties hereby agree as follows:

## Article 1
## Defined Terms; Rules of Construction

**1.1 Defined Terms**

As used in the Plan the following terms (which appear in the Plan as capitalized Terms) shall have the meanings set forth below:

"**ACH**" means Automated Clearinghouse Transaction. ACH transactions are aggregated for the day and sent out to the Federal Reserve through a Fed member bank. IRMS LLC initiates said ACH file transmission and ISR herewith authorizes IRMS LLC or its designees and agents to perform all such transactions as are reasonably related or required within the scope of services in this agreement or any addendums hereto.

"**ACH Fee**" means all the services and costs associated with settlement of principal, surcharge, rebates, withdrawals, and adjustments. Said fee is subject to changes in network, gateway, settlement bank and sponsor bank charges and changes in compliance requirements.

## Processing and Service Agreement with ISRs

"**Acquirer Transaction**" means a transaction initiated at a Merchant establishment in whose location an EFT device or terminal is located.

"**Business Day**" means any day other than a Saturday, Sunday or "legal holiday" (as such term is defined in applicable rules, regulations or policies, as the same may be amended from time to time, which incorporate requirements from third party government and quasi-governmental units and such third parties (Gateway provider, network and account processors) as may be involved in the processing and settlement of EFT transactions in the ordinary course of events.

"**Card Services**" shall mean the facilitation of Customer's cardholder transactions regardless of transaction type or authorization method (e.g., on-line to Customer's applications processor, using a cardholder database on Vendor's system, using defined limits, etc.). Any Card Services provided through or under this Agreement shall be identified by either an addendum to this agreement or such other document with an established vendor or alliance partner of IRMS LLC in which the ISR sells, designs, provides or otherwise participates in a proprietary, open system or hybrid card service program including but not limited to Payroll Cards, Gift Cards or other prepaid or funded card system or card service.

"**Cash**" means cash, cash equivalents and other readily marketable direct obligations of the United States, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a distribution under the Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from the Reorganized Debtors or the Unsecured Creditors Trust, as the case may be, drawn on a domestic bank or in such digital or other lawful form as to reasonably construed as cash under this paragraph.

"**Customer**" means the ISR under this agreement. The parties understand and acknowledged that third parties are involved in the scope of the services provided under this agreement both as vendors and as clients including but not limited to merchants, salespeople, service personnel, banks and financial data processors and networks; however, it is understood that "Customer" as used in this agreement refers, as the context requires, to the ISR that executes this agreement and that the ISR includes those third parties under ISRs control, direction or affiliation, and that to the extent required, said third parties shall be registered, disclosed and qualified as required by network rules, the policies of the Sponsor Bank or the policies of IRMS LLC.

"**Emerging Market**" means non-traditional or products and services.

"**Gateway Provider**" also referred to as Gateway, Gateway link, Gateway Processor, means a financial data processor that provides access to one or more EFT networks, whether owned by an association of banks or otherwise providing interchange and switching services so that the cardholder of one bank can access his/her account using the EFT, ATM or other device or terminal operated by another bank or sponsored entity of a bank or other member institution or non-member institution qualified to provide sponsorship. It provides IRMS LLC with network access through Gateway links. Those "links" are communication links through which the information regarding each transaction is transmitted from the IRMS LLC intercept processors and the Gateway and then forwarded to the appropriate EFT network and then the EFT network sends the transaction data to the card-issuing financial institution for approval of the transaction. IRMS LLC maintains said links through its processors. Both links may be referred to as other acronyms but nonetheless refer to the same processing systems.

"**Gateway Services**" shall mean the facilitation of Customer's cardholder and/or Terminal transactions in each Network in which Customer participates and/or is a member. A Gateway transaction shall mean any receipt, transmission or exchange of data, whether completed or not.

2

Initial

Initial

## Processing and Service Agreement with ISRs

"**Governmental Authority**" means any agency, board, bureau, executive, court, commission, department, legislature, tribunal, instrumentality or administration of the United States, a foreign country or any state, or any provincial, territorial, municipal, state, local or other governmental Entity in the United States or a foreign country. Government Authority includes but is not limited to the United States Federal Reserve regional and central banks and the rules, regulations and definitions continued within the publications of the Federal Reserve.

3

Initial _/s/_  Initial _/s/_

EFT000043

## Processing and Service Agreement with ISRs

"**Independent Sales Representative**" (ISR) means "Customer" which is an organization or entity that serves as the sales channel and/or primary service provider to merchants in whose commercial establishments EFT devices or terminals are located (Acquirer), or who serve as the sales channel and service provider for card issuance programs (Issuer). There are Master ISRs and Primary ISRs. The Master ISR is one selected by IRMS LLC to be the exclusive provider of services in a particular industry or geographical location. The Master ISR and Primary ISR are either already sponsored under a third party sponsorship bank with a qualified financial institution or are sponsored by IRMS LLC by virtue of its powers and discretion conferred through its contracts that provide Gateway Processing and Bank Sponsorship. If no third party sponsorship agreement exists for ISR, ISR shall bear the costs of sponsorship fees as they apply to the Customer under this agreement. As to the convenience fee or surcharge, Customer instructs IRMS LLC to distribute portion of the revenue to specific people or entities who serve as salesmen, locators, service providers, lenders, investors or other third party with interests in a particular merchant location or group of merchant locations.

"**Insurance Coverage**" means any insurance coverage under any Insurance Policy which is available for the payment of liability or damages arising from or related to Tort Claims.

"**Interchange**" means the fee charged by the Network switch for providing a common financial data processor by which the customers of one bank can electronically access their bank accounts at electronic funds transfer devices owned, operated or sponsored by another bank. In Acquirer transactions, transactions are separated first into two categories --- ATM and POS. In ATM transactions, the Interchange is charged to the bank that issued the ATM or debit card that was issued. In Point of Banking transactions (primarily the NYCE network) the interchange cost structure is lower than other networks. In Electronic Benefit Transactions (primarily the Quest network) the interchange cost structure is lower than other networks and there are certain rules, some of which are copied from national or regional networks that restrict certain types of convenience fees charged to cardholders in operating a terminal. In POS transactions, the interchange is charged to the merchant or operator of the terminal. Issuers in ATM transactions pay the Interchange fee which is then distributed to the network, gateway processor and intercept processor. Issuers share in the interchange fee charged to the merchant or operator of the terminal in POS Debit transactions such that there is a net income to the issuer when the card is utilized for a POS Debit transaction rather than as an ATM. The Interchange is not be confused with Surcharge or Convenience Fee, which is a separate fee handled in a different way. Interchange is also not to be confused with the Processing Fee charged by the Intercept processor (IRMS LLC) or Gateway fee which is also handled in a different way. Interchange should also not be confused with the Account Access Fee charged by the Issuing Bank to its cardholder, usually for using "foreign" ATMs (i.e., ATMs not operated by the issuing bank; the account access fee is a bank fee and a matter strictly between the cardholder and his depository bank that issued him the ATM or POS Debit Card. Interchange in POS Credit transactions is usually charged directly to the merchant as a transaction charge plus a percentage of sale fee.

"**Issuer**" means a bank that issues a card for use at an ATM, POS Debit, Point of Banking, POS Credit or other EFT terminal or device for access to the cardholder's account. Issuers issue cards to either direct account holders who maintain standard demand deposit or savings account at the Issuer Bank or an indirect account managed through a proprietary or Network approved card issuance program.

"**Liabilities**" means any and all liabilities, obligations (except for the Assumed Obligations), judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to a party or any Affiliate, Subsidiary, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence.

4

Initial

Initial

## Processing and Service Agreement with ISRs

"**Lien**" means, with respect to any asset or Property, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such asset or Property, whether voluntary or involuntary and whether arising by law, contract or otherwise.

"**Management Company**" means the entity designated at will by IRMS LLC for security and administrative purposes in whose name the IRMS LLC designated depository institution (Settlement Bank) receives the Master Settlement. The management company has no possessory rights to any money received from IRMS LLC transactions and acts strictly as a conduit, management and reporting entity in consideration of its receipt of a Management Fee. The current management company is IRMS LLC (IRMS LLC) which provides the direct processing for intercept, gateway, and sponsorship and settlement services.

"**Management Fee**" means the fee paid by IRMS LLC to the entity designated to receive Master Settlement. The amount of the management fee is determined on a month to month basis after deduction of expenses directed to be paid by IRMS LLC, in accordance with industry standards and prior conduct of normal operations of the Management Company. These fees include fees for transaction processing, terminal registration and support, settlement and related services.

"**Master Settlement**" means the ACH settlement to the depository bank designated by IRMS LLC (Settlement Bank) to receive the gross amount of principal withdrawals approved during the previous banking day and the gross amount of surcharge revenue and interchange revenue for the same period. Master Settlement represents entirely third party funds, to wit: IRMS LLC and IRMS LLC' customers and IRMS LLC' vendors. Master Settlement is then broken down into individual ACH settlements generated by the processor which are processed through the Federal Reserve on behalf of IRMS LLC through the respective designated depository banks accounts (Settlement Bank Accounts). Master Settlement is received by the IRMS LLC' designated depository institution into the name of the management company designated by IRMS LLC, i.e. IRMS LLC.

"**Merchant**" means a retail or professional establishment doing business with the consumer public and which has signed up with a regional or national electronic network through IRMS LLC to be a sponsored retail merchant permitted to offer electronic banking services to its customers and who can receive compensation and reimbursement for advancing funds to its customers in an ATM, ATM Scrip, Point of Banking, Point of Sale or other electronic funds transaction. Merchants are signed up by IRMS LLC channels which are usually ISRs. ISRs maintain the exclusive relationship with the merchant except for certain customer service activities provided by IRMS LLC through IRMS LLC, and GES. The devices in the Merchant establishments are operated by the merchant but usually initiated by their customer. Said devices or terminals are owned by either the merchant, the ISR or a third party investor or lender.

"**Network**" means any financial data processing switch connecting two or more unrelated financial institutions such that the holders of cards issued from institution can access their financial accounts at another unrelated financial institution through electronic funds transfer devices including but not limited to ATM, Point of Sale (POS), Point of Banking (POB), Electronic Benefits Transfer (EBT), payroll cards, prepaid debit cards, gift cards etc. By way of example, such networks may include but are not limited to MasterCard, Cirrus, Maestro, Visa, Plus, Interlink, Discover, Pulse, NYCE, AMEX, STAR, Jeannie, Shazaam, Quest and other regional, national and international networks. Network also includes associations of financial institutions and/or non financial institutions. Some networks require sponsorship while others do not. All require some written documentation and agreements with the Gateway processor and/or the intercept processor. Networks connect to EFT devices and terminals through Gateway processors which in turn connect through intercept processors. The intercept processors, also known as indirect processors, connect directly with the EFT devices or terminals.

"**Network Compliance Claim**" means any Claim or demand now existing or hereafter arising (including all thereof in the nature of or sounding in tort, contract, warranty or under any other theory of law or equity) against the Debtor, its successors or assigns, Subsidiaries or Affiliates, or their present or former officers, directors or employees, arising out of, or related to, any rules of the United States Federal Reserve, any enforceable rule of a participating network for electronic

5 _____

Initial _____  Initial _____

**Processing and Service Agreement with ISRs**

funds transfer and settlement, or any other Federal, State or Local Laws, including any Claim or demand: (a) to restrict or enjoin, or recover damages, costs or expenses to remedy, any alleged violation, or to require the Debtor to remedy or to reimburse, pay or incur costs to remedy any violation, (b) to remedy, reimburse, compensate or pay any damage, penalty, fine or forfeiture for, or to restrict or enjoin, any violation of or alleged violation of any such rules or Laws, (c) to pay any contractual claim with respect to any such rules or Laws, or (d) to pay or reimburse any Person or Entity for financial injury, whether or not contemplated in subparagraphs (a) through (c) above, or whether or not such Claim or demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, or whether or not the facts of or legal basis for such Claim or demand are known or unknown, or whether or not the injury, loss or damage giving rise to such Claim or demand was known, unknown, diagnosable, undiagnosable, detectable or undetectable before the Confirmation of the Plan or before the Final Decree Date. Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Network Compliance Claim" shall be broadly construed and shall include (a) claims that may or may not presently constitute "claims" within the meaning of Section 101(5) of the U.S. Bankruptcy Code and (b) demands that may or may not presently constitute "demands" within the meaning of Section 524(g)(5) of the U.S. Bankruptcy Code. Customer shall pay all fees, fines, assessments, penalties and other amounts in effect or assessed by each Network, which may change from time to time. IRMS LLC may allocate any such fees, fines, assessments and penalties in such manner, as it deems advisable in its sole discretion. Customer assumes all responsibility for collecting any amounts arising in connection with the use of Customer's cardholders' cards and/or Terminals, including but not limited to transaction amounts, fraud or other losses. Customer is solely responsible for all costs directly or indirectly associated with any system upgrades required by Customer or Vendor as a result of changes in the Network Documentation and/or any Network standards or requirements. In the event of any changes or modifications to the Network Documentation, which affect the responsibilities of a Network Participant or any processor in such Network, Vendor may amend this Agreement and/or change the applicable Service upon 30 days prior written notice to Customer.

"**Network Documentation**" shall mean the published Network by-laws, operating rules, identification standards manual, and such other rules, regulations, manuals, policies and procedures (including Vendor's standards), as may be amended from time to time, as published by the appropriate network. Network documentation includes documents required by the Network as well as Network published by the Network or association operating the Network.

"**NETWORK MEMBERSHIP:**" Customer shall indicate below the Network(s) in which Customer is a Network Participant. In the event for any reason Customer participates in a Network which Customer has not indicated below, Customer agrees that all of Customer's obligations in the Agreement and this Addendum shall apply with respect to such Network as if Customer had indicated such Network effective the date Customer begins participating in such Network. Customer agrees to abide by and fully comply with the Network Documentation as may be in effect from time to time and to perform and fulfill any and all obligations and responsibilities related thereto, including, if requested by the Network, execution of additional documentation or agreements. Customer, or its agents or nominees (but not Vendor), will provide all necessary Network, federal, state and/or local regulatory sponsorship, membership or other applicable approvals in order to receive the Services, unless otherwise specifically agreed to in writing in the form of an Amendment to the Agreement or in another contract signed by an authorized officer of Vendor. Notwithstanding the fact that a specific Network is listed below, Customer acknowledges and agrees that Vendor shall only be obligated to provide access to the Networks actually supported by Vendor and for only so long as such Networks are supported by Vendor.

**Gateway Services/Networks May Include and are not limited to:**

Cirrus® Corresponding Member
(Issuer & Acquirer)
Cirrus Terminal Only
Quest (EBT transactions)
Corresponding Member (Acquirer Only)
Maestro®

6 _____

Initial *[signature]*                                                                                                     Initial *[signature]*

**Processing and Service Agreement with ISRs**

NYCE
American Express® ATM Network Member
Automated Clearinghouse Network(ACH)
Co-Op Network
Presto
Star®
Axcess America
Allpoint Network
Online Resources
Plus Sponsored Member(Issuer & Acquirer)
Plus ATM Category B Member(Acquirer Only)
Visa ATM Acquirer Member
Interlink
Discover Card Sponsored ATM
Acquirer Member
Armed Forces Financial (AFFN)
Credit Union (CU24)
Pulse

Debit Card Services/Networks

MC Debit Card
VISA Checkcard

"**Network Participant**" shall mean any financial institution such as a bank, thrift, credit union, or other entity, such as a merchant or Independent Sales Representative (ISR), which is a member of and/or is otherwise participating in a Network. In certain networks a non-network participant may nonetheless qualify as a sponsoring financial institution subject to the applicable network rules; in such cases the published rules of the network shall apply and the definitions therein shall take precedence over the definitions in this paragraph.

"**Network Registration Fee**" means the expenses incurred by IRMS LLC in registering the ISR with a particular Network. Each network registration fee generally varies from $1500-$5,000.

"**Network Settlement**" means the settlement through the United States Federal Reserve System of net debits and net credits to issuing and acquiring banks based upon EFT transactions of the day. These settlements are usually processed at midnight of the end of the banking day. The cutoff for the banking day for posting of electronic funds transfer transactions is usually 7:30 P.M. In its simplest form, if the cardholder from one bank, takes money from the ATM of an unrelated bank, then the money is transferred from the "issuer" (i.e., the bank that issued the cardholder the ATM or debit card he/she used in initiating the transaction) to the "acquiring bank" (i.e., the bank that owns, operates, sponsors or settles transactions on behalf of the operator of the terminal). In Network Settlement, a bulk settlement occurs to the credit of the bank for the Gateway processor. Hence in this case for transactions processed on the FIS gateway link, are combined with all other processors and deposited in bulk to an account designated by the Gateway processor at the depository institution utilized by the gateway processor to receive such deposits. This deposit is usually an ACH deposit but it can be wire transfer, depending upon the option of IRMS LLC and exigencies of the situation. The Gateway processor then separates out the deposits for each processor and sends a Master Settlement to the depository institution designated by its customer. The Network makes a deposit to the FIS (or subsequent gateway) account at the Master Settlement Bank (i.e., the Settlement Bank of the Gateway Service Provider). The Gateway Service Provider then prepares the ACH data file for Master Settlement to the depository institution designated by IRMS LLC. IRMS LLC then prepares the ACH data files for transmission to the Federal Reserve to deduct the

7

Initial _DCa_

Initial _an_

money from the Settlement Bank Accounts for individual settlements to the depository institutions selected by each merchant for receipt of these funds and the same for the revenue disbursements or rebates for each depository institution for the ISRs, other third parties who share in the revenue, and vendors who provide telecommunications, processing or other services to the IRMS LLC Venture. Network fees are subject to changes in network, gateway, settlement bank and sponsor bank charges and changes in compliance requirements

"**Person**" means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any other entity or institution of any type whatsoever, including but not limited to any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

"**Pro Rata Share**" means, with respect to any distribution under the ISR or other properly designated third party, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims (computed by pro rating days or other reasonable formula).

"**Processing**" means the actual receipt of data, logging of the data, and sending of data, whether encrypted or not, in accordance with industry standards for electronic funds transfer and all applicable laws, rules and regulations of the Federal Reserve System, networks, and contracts governing the conduct of the parties to the entire processing system by which the terminals or devices placed in merchant establishments are utilized by cardholders to access their bank accounts and perform financial or non-financial transactions. Processing includes intercept or indirect processing which involves the capture of data from the terminal or device, Gateway, which involves the capture of data from the intercept or indirect processor, Network, which involves the capture of data from the Gateway, Account Processor which involves the capture of data from the Network, and the return of data (authorization of transaction) through those same parties in reverse order back to the terminal.

"**Processing Fee**" means the fee charged by IRMS LLC for the processing of a transaction. Said fee is not subject to changes in network, gateway and sponsor bank charges and changes in compliance requirements. ISR will be given as much notice as is reasonable and possible by IRMS LLC or IRMS LLC of any increases in fees resulting from said changes. No such changes are currently known beyond those provided in this agreement. However this is not a warranty that no such changes are in the publication or otherwise in process.

"**Property**" means any property or asset of any kind, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind therein.

"**Registration**" mean the process by which an ISR is entered into the IRMS LLC database and/or the process by which a Merchant or Merchant Terminal or Device is entered into the IRMS LLC database. Registration is a condition precedent to processing transactions on behalf of any ISR, Merchant, or Terminal. Registration is performed by EFT Management Services, Inc. Registration is not the same as Download.

"**Registration Fee**" means the fee charged by IRMS LLC for initiating an ISR, Merchant or Terminal into the IRMS LLC system for access to the FIS Gateway or any successor or substitute Gateway utilized by IRMS LLC. Registration fee is not the same as Download Fee or Monthly Fee.

"**Settlement Bank**" means the depository institution selected and designated by IRMS LLC to receive deposits of the proceeds of principal withdrawals and revenue from transactions that were processed through the IRMS LLC intercept processor, the Gateway Processor and the appropriate EFT network to which the issuing financial institution is a member. IRMS LLC or its contracted agents, for purposes of security and administration, may order the deposits to be made at the depository in the name of a designated surrogate who serves at the will and discretion of IRMS LLC, and serves as a transparent conduit for movement of funds initiated or to be initiated by a IRMS LLC processor for transactions on the current Gateway link(s) or its successor. The Settlement Bank is also an Automated Clearinghouse (ACH) service provider that allows IRMS LLC and IRMS LLC access to the accounts through electronic means for electronic transmission of funds through the United

Initial *[signature]*    Initial *[signature]*

## Processing and Service Agreement with ISRs

States Federal Reserve System. The settlement Bank may be one of several financial institutions that have agreed to provide ACH services.

**"Sponsor Bank" (also referred to herein as sponsor or sponsorship)** means a bank or other financial institution that is a member of, or has non-member rights to vouch for the transactions of a processor, ISR or encryption organization. The sponsor bank assumes all liability associated with all transactions of every type, nature and kind covered within the scope of its agreement for sponsorship, whether in writing (three-part agreement between Gateway, Sponsor and third party ISR or intercept processor), orally, or by operation of law. The parties agree that the sponsored entity (ies) may include IRMS LLC, IRMS LLC or a third party designee including but not limited to specific qualifying ISRs, the gateway provider or other vendors. Changes in fees from the sponsoring entities and agents will be passed through to the ISR who may pass through the expenses to either the merchant or cardholder.

**"Sponsorship Fee"** means the fees earned or incurred by IRMS LLC for a financial institution to provide sponsorship for the transactions covered by the scope for this agreement. Said fee is subject to changes in network, gateway and sponsor bank charges and changes in compliance requirements.

**"Surcharge" or "Convenience Fee"** means the fee charged by the operator of an EFT terminal for the use and convenience of the terminal or device in a merchant establishment. This amount is collected by the Management Company and distributed to third parties in accordance with the instructions of the ISR or Merchant. Some networks through which a transaction is routed do not permit surcharge transactions including but limited to Cirrus International, Plus International, Axcess America, All Points, and certain other Associations of community banks and credit unions. IRMS LLC makes no warranty of receipt of surcharge income on transactions routed through those networks.

**"Telecommunications Fees"** means the costs and expenses of all aspects of the transmission of data from and to an EFT terminal, the intercept processor, the gateway processor, the network, the account processor and back through the loop and any intermediary parties therein. Said fee is subject to changes in third party service companies, network, gateway, settlement bank and sponsor bank charges and changes in compliance requirements. ISR bears the entire expense of connection from the terminal to the intercept processor and together with the merchant is solely responsible for the quality, consistency or availability of that connection.

**"Terminal"** means an ATM, POB, POS, or other electronic funds transfer device which is or which may be supported directly or indirectly by Vendor in accordance with its Standards, as certified through the Gateway processor(s) and network(s) as may be required by IRMS LLC, IRMS LLC or network documentation to perform transaction sets within the industry definitions of ATM, POB, POS, POS Scrip as the case may be, and as the same is amended by documentation or conduct of the applicable networks.

**"Terminal Services"** means the facilitation, processing and/or settlement of transactions at Customer's Terminals or within Customer's IRMS LLC-approved programs.

**"Terminal Software"** means the operating system, encryption, communications protocol and merchant data compliant with IRMS LLC host (server) requirements. IRMS LLC shall provide such software as is available through any means to IRMS LLC, but dos not guarantee the functioning of terminal software. Each ISR/Customer is responsible for development or improvement of terminal software as may be required from time to time in such manner that same can be certified through all host processors, networks and account processors in the EFT system utilized for authorization and completion of transactions. In all cases where the ISR has created terminal software for any EFT terminal, said software shall be made available in machine language and object code in executable form such that it can be downloaded and fully perform all expected functions by IRMS LLC information technology employees or representatives. IRMS LLC shall not provide access to said software to any third party for any purpose other than providing customer service. The delivery of the terminal code and all documentation reasonably requested by IRMS LLC shall never be construed as a conveyance of title or license to the code, except for the purposes expressed in this Agreement and more specifically in this paragraph.

9

Initial _____

Initial _____

"**Third Party Fees**" means any fees attributable to ISR's operations from third parties, affiliates, or other entities or persons which are billed or billable to the ISR. Customer shall pay all third party fees, costs, expenses and assessments in connection with the Services, which may change from time to time, whether incurred directly or indirectly by Customer, Vendor and/or its affiliates. Third party fees include, but shall not be limited to, all communications expenses (e.g. equipment, lines, drop charges, access charges, long distance, etc.); all hardware costs (e.g. the cost of individual Terminals, modems, upgrades, modem sharing devices, etc. and any expenses associated therewith (e.g. setups, maintenance, etc.); all Network fees; all miscellaneous fees associated with the Services (e.g. mailing expenses, overnight courier expenses, plastics, etc.); and all costs associated with maintaining and implementing all software and hardware necessary for any interface affecting the Services.

"**Tort Claim**" means any Claim or demand now existing or hereafter arising (including all thereof in the nature of or sounding in tort, contract, warranty or under any other theory of law or equity), their predecessors, successors or assigns, Subsidiaries or Affiliates, or their present or former officers, directors or employees, for, relating to, or arising from any death, personal injury, damage or loss (whether physical, emotional or otherwise) to any Person or Property, including any Claim or demand for compensatory damages (such as loss of consortium, wrongful death, unearned wages, survivorship, proximate, consequential, general, and special damages) and punitive damages, and any products liability claim, in each case for any act or event occurring on or prior to the Effective Date, whether or not such Claim or demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, or whether or not the facts of or legal basis for such Claim or demand are known or unknown, or whether or not the injury, loss or damage giving rise to such Claim or demand was diagnosable, undiagnosable, detectable or undetectable before the Effective Date. Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Tort Claim" shall be broadly construed and shall include (a) claims that may or may not presently constitute "claims" within the meaning of Section 101(5) of the Bankruptcy Code and (b) demands that may or may not presently constitute "demands" within the meaning of Section 524(g)(5) of the Bankruptcy Code.

"**United States**" (U.S.) means the United States of America.

"**Vault Cash**" refers to the established local currency in the individual vaults of individual ATM terminals which may be subject to a separate service agreement with IRMS LLC or an affiliated entity. Said fee is subject to changes in network, gateway, settlement bank and sponsor bank charges and changes in compliance requirements. Under no circumstances shall IRMS LLC be considered the owner of said currency or any other contents of the vault, nor shall IRMS LLC be responsible or liable for any event, management, claim or handling of said currency. Any parties that elects to be involved in the servicing of cash vaults assumes full responsibilities for the vault, shall have adequate and appropriate insurance pursuant to industry standards, and shall have adequate and appropriate maintenance arrangements pursuant to industry standards. Fees charged by third parties in connection with vault cash, cash management or armored car services will be passed through to ISR if invoiced to IRMS LLC.

"**IRMS LLC Vendors**" means all third party entities that provide services to IRMS LLC, as they may be modified, changed or replaced from time to time by IRMS LLC. IRMS LLC acknowledges and represents that it is the duty of IRMS LLC to provide said gateway services through the Master Services Gateway Provider Agreement executed with such third party (ies) as deemed appropriate by IRMS LLC management.

Any capitalized term used in the Agreement that is not defined in the Agreement but that is defined in industry standard rules, regulations, laws or policies shall have the meaning ascribed to that term in the EFT industry with IRMS LLC rules policies controlling in the case of a conflict or ambiguity.

1.2  **Rules of Construction.**

Initial _[signature]_                                                                                                   Initial _[signature]_

Case 24-01327-LMI   Doc 1-1   Filed 06/20/24   Page 11 of 18

**Processing and Service Agreement with ISRs**

For purposes of this Agreement: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (c) any reference to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented; (d) if the description of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references to Articles and Exhibits are references to Articles and Exhibits of this Agreement; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto" refer to this Agreement in its entirety rather than to a particular Article or section or subsection of the Agreement; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the Exhibits referred to in the Agreement shall be deemed incorporated herein by such reference and made a part hereof for all purposes; and (i) if necessary, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in the construction of the Plan, to the extent such rules are not inconsistent with any other provision in this Article 1.2.

## Article 2

## TERMS

I. **ENTITLEMENTS & RESPONSIBILITIES**

    A.    **IRMS LLC**

        **IRMS LLC Requirements:**
        a)    IRMS LLC and its affiliates agree to not, without written authorization from ISR, offer, promote or propose any processing services as defined in this agreement, to a merchant which is currently under a processing agreement with any other ISR or its affiliates, which is under a contract with ISR for processing services.

        **IRMS LLC Responsibilities:**
        b)    Honor and protect the confidentiality of information provided by ISR and its clients.
        c)    Transmit Settlement and Surcharge funds to the bank accounts designated by ISR, via Automated Clearing House transfers, on the same day the funds are made available to IRMS from the participating networks.
        d)    ISR will be responsible for all bank relationships, operational and processing costs associated with distribution of funds to its customers
        e)    Provide ATM Transaction processing and managed services.
        f)    Provide Terminal Transaction reports on a basis agreed in the terms and provisions of this agreement.
        g)    Provide routing and gateway to a majority of all major and minor national and regional EFT networks for ATM and POS devices as defined by IRMS LLC network, the proprietary EFT banking network hosted for IRMS LLC, as amended from time to time.
        h)    Will not disparage ISR to any bank or financial institution processing gateways, ATM networks, or any other Person, nor will it interfere with the customers of ISR in any way.
        i)    Will represent its relationship with the ISR as that of a vendor to the ISR, and will keep all elements of this agreement confidential for two years after the termination of the agreement

    B.    **ISR**

Initial _[signature]_                        Initial _[signature]_

EFT000051

## Processing and Service Agreement with ISRs

1. **Requirements:**
   a) ISR shall provide IRMS LLC with all information requested on the ISR Registration form and any other information reasonably requested by IRMS LLC from time to time. ISR warrants that all said information is true and that ISR shall immediately notify IRMS LLC of any change in status or information The Registration form must specifically state if the Merchant is participating in Emerging Markets. If IRMS determines a Registration form submitted by ISR did not correctly specify a Merchant as participating in Emerging Markets, IRMS may, at its sole discretion, terminate the Merchant's ability to process transactions through IRMS and assess a fine against ISR of $ 5,000, which will paid by a reduction in Surcharge payments to ISR.
   b) ISR and its affiliates will submit updated Registration forms for all currently active Merchant locations specifically indicate if the Merchant is participating in Emerging Markets.
   c) ISR and its affiliates will convert all of its customer's terminals to be directly connected to IRMS' selected processor. The process must be completed on a timely basis. If the process involves a manual process then the target date for completion is June 30th, 2017.
   d) ISR and its affiliates will exclusively process all of its transaction processing customer's transactions with IRMS for the duration of this agreement.
   e) ISR and its affiliates agree to not, without written authorization from IRMS, offer, promote or propose any processing services as defined in this agreement, to a merchant which is currently under a processing agreement with any other ISR or its affiliates, which is under a contract with IRMS for processing services.
   f) ISR agrees to provide IRMS full physical and communications access to all of ISR's transaction processing environment, including but not limited to firewalls, switches, servers and databases.
   g) Provide telephone or other communications services at its expense for ATM or arrange for same with location.
   h) Provide shipping at its own expense to and from location of the ATM.
   i) Create all hard copy and digital files with correct data for registration including but not limited to a signed merchant service application.

2. **Responsibilities:**
   a) Honor and protect the confidentiality of information provided by IRMS LLC and its clients and prospective clients, including but not limited business methods, software for download, encryption, registration, reporting, analysis, management, processing, switching of any ATM, POS, EBT or other EFT device that ISR ever receives information on that relates to IRMS LLC, its affiliates, alliance partners or vendors.
   b) Ensure accuracy and thoroughness of information provided IRMS LLC (its equipment suppliers and service providers).
   c) Ensure the merchant has provided proper and complete site preparation, adequate signage and appropriate promotion of the terminal.
   d) Continually monitor each and every merchant on at least a weekly basis to determine if the merchant is adequately trained in the use of the terminal, has maintained adequate signage and appropriate promotion and that the merchant has adequate supplies for the terminal.
   e) Promptly inform IRMS LLC of any delays (included but not limited to settlement of principal or rebate) or specification changes.
   f) Promptly inform IRMS LLC of any changes in registration data
   g) To use IRMS LLC exclusively for any ATM related services as to any device that is the subject of this agreement.

Initial

Initial

    h)   Will not disparage IRMS, LLC to any bank or financial institution processing gateways, ATM networks, or any other Person, nor will it interfere with the customers of IRMS LLC in any way.

    i)   ISR will specifically refer all inquiries from ACE Cash Express personnel to IRMS LLC or its designee.

    j)   Will represent its relationship with IRMS LLC as that of a customer of IRMS, LLC and keep all elements of this agreement confidential for two years after the termination of the agreement. Additionally, ISR and its employees and affiliates will not engage in any oral, written or electronic form of communications with any party or parties which is defamatory in nature in regards to IRMS LLC or its affiliates. Failure to comply with these requirements will cause the agreement to be terminated immediately and without notice. ISR understands termination of processing services does not adequately compensate IRMS for any or all damages from defamatory communications and IRMS does not waive its right for further legal recourse.

    k)   Has full and complete responsibility for accuracy of its transaction processing, settlement calculations, settlement routing and reporting to its clients.

## II. TRANSACTION PRICING

A.   Pricing of IRMS LLC services are as stated in **Exhibit A**, attached hereto "Managed and Processing Services Pricing". Processing services are priced on a per transaction/per terminal basis. Other pricing is on a per service charge and may or may not be applicable with the specific services provided to an ISR or merchant under this agreement.

## III. ISR / MERCHANT COMPENSATION

A.   ISR COMPENSATION: ISR compensation is derived from the charges negotiated with the merchant where the terminal is located. ISR compensation can include sharing in Merchant surcharge income. Net compensation is the amount the ISR receives, after all expenses and processing charges payable to IRMS LLC If daily settlement is required (and accepted by IRMS LLC Inc), the full principal will be settled to the Merchant (dispenser of cash) and a portion of the surcharge will be settled. The balance of the surcharge (convenience fee) settlement will be paid and reconciled on the 15th day of the close of the previous calendar month. Any other fees or charges against merchants or ATM customer (or their bank) will be disbursed on the 15th day of the month following receipt.

B.   FEES BASED ON CURRENT INTERCHANGE LEVELS: The various fees for transaction processing and associated servicing under this agreement are not subject to change by either party to this agreement without express written consent of both parties.

C.   ISR shall provide such services as indicated above or otherwise reasonably required by its merchants on a timely and expeditious basis; in the event that IRMS LLC determines that it is necessary to retain the services of additional personnel to provide said services, the cost of said additional personnel shall be deducted from the ISR's income and/or the merchant's income.

D.   ISR hereby grants IRMS LLC or its designee full power of attorney for electronic access (ACH) to the ISRs account and the merchant's account for deposits and withdrawals under this agreement on behalf of himself and all merchants signed up under the scope and terms of this agreement.

E.   MERCHANT COMPENSATION: Merchant compensation is derived from charges the merchant levies on customers using the terminal in their location and any other per transaction amounts negotiated between the ISR and Merchant

13

Initial

Initial

**Processing and Service Agreement with ISRs**

IV. **NOTICES**

    A. DELIVERY OF NOTICES. All notices required hereunder shall be in writing and delivered in person or by certified or registered mail, return receipt requested, postage prepaid. Such notices shall be addressed as follows:

| Indian River Merchant Services LLC | ISR: EFT Services LLC |
|---|---|
| 22101 US HWY 19 North<br>Clearwater, FL 33765 | 4801 S University Drive #303<br>Davie, FL 33328 |

V. **MISCELLANEOUS**

    A. IRMS LLC wherever used in this agreement means any one of a number of entities or persons designated by IRMS LLC to act as agent for Indian River Merchant Services LLC pursuant to the requirements, terms and conditions of this agreement. Each of said companies has authority to do business as IRMS LLC.

    B. SUPERSEDE. This Agreement and the Exhibits hereto contain the entire understanding of the parties hereto and supersedes all prior written or oral agreements with respect to the subject and scope contained within this Agreement.

    C. SEVERABILITY. The illegality, invalidity or if unenforceable of any provision, Article or Exhibit of this Agreement shall not affect the remainder of this Agreement. In any proceeding involving the construction of this agreement, neither party shall be presumed to be drafter of the agreement; any provisions that are unenforceable for any reason shall be amended automatically to allow for enforcement of the remainder of the agreement and of the specific provision, if possible.

    D. **GOVERNING LAW. This Agreement shall be governed, construed and interpreted under the laws of the State of Florida. The sole and exclusive venue for raising any dispute or claim brought by ISR shall be Pinellas County, Florida.**

    E. HEADINGS. The heading contained herein is used for convenience and ease of reference and do not limit the scope, intent or interpretation of the Article headings or their subheadings.

    F. PERSONS BOUND: This agreement is binding upon the parties hereto and any person or entity claiming through them including but not limited to any and all heirs, successors, assigns (if expressly permitted in writing by IRMS LLC), affiliates, agents, servants or employees and/or any entity in which any signatory or party hereto has any material ownership interest or business relationship.

    G. LIMITS ON LIABILITY -- EXCEPT THOSE EXPRESS WARRANTIES MADE IN THIS AGREEMENT, IRMS LLC DISCLAIMS ALL WARRANTIES INCLUDING, WITHOUT LIMITATION, ANY EXPRESS OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. Without limiting the foregoing, IRMS LLC and IRMS LLC shall not be liable for lost profits, lost business or any incidental, special, consequential or punitive damages (whether or not arising out of circumstances known or foreseeable by IRMS LLC or IRMS LLC) suffered by Customer, its customers or any third party in connection with the Services provided by IRMS LLC or IRMS LLC hereunder. IRMS LLC or IRMS LLC liability hereunder shall in no event exceed an amount equal to the lesser of (i) actual monetary damages incurred by Customer or (ii) fees paid for the particular Services in question for the calendar month immediately preceding the date on which IRMS LLC and IRMS LLC received Customer's notice of nonperformance as set forth in this Agreement. In no event shall IRMS LLC or IRMS LLC be liable for any matter beyond its reasonable control, or for damages or losses wholly or partially caused by the Customer, or its employees or agents, or for any damages or losses which could have been avoided or limited by Customer giving notice to IRMS LLC and IRMS LLC as provided in Section 7. No cause of action, regardless of form, shall be brought by either party more than

14

Initial

Initial

       1 year after the cause of action arose, other than one for the nonpayment of fees and other amounts, including any damages, due IRMS LLC under this Agreement.

  H.  **Other Agreements.** IRMS LLC reserves the right to enter into other agreements pertaining to the Services with others including but not limited to without limitation banks, savings and loan associations, credit unions and other financial institutions and non-financial institutions, Independent Sales Representatives, indirect financial processors, gateway processors, or other parties that may or may not offer the same or similar services to those offered by Customer.

  I.  **Taxes.** Any sales, use, excise or other taxes (other than IRMS LLC income taxes) payable in connection with or attributable to the Services shall be paid by Customer. IRMS LLC may, but shall not have the obligation to pay such taxes if Customer fails to do so. In the event IRMS LLC pays such taxes, Customer shall immediately reimburse IRMS LLC upon demand and at the interest rate applicable for delinquent amounts as set forth in Section 4 hereof.

  J.  **Violation of Applicable Laws and Regulations.** IRMS LLC may cease providing any Service if such Service, in IRMS LLC opinion, violates any federal, state or local statute or ordinance or any regulation, order or directive of any governmental agency or court, or any published policy of IRMS LLC, related sponsoring bank, related settlement bank, federal, state or local agency, or proprietary or public network offering switching services for electronic funds transfer.

  K.  **No Intended Benefit to Third Party Beneficiary and No Right of Action to Third Party Beneficiary.** This Agreement is for the benefit of, and may be enforced only by, IRMS LLC and Customer and their respective successors and permitted transferees and assignees, and is not for the benefit of, and may not be enforced by, any third party, including but not limited to those third parties whose existence is disclosed, directly or indirectly to IRMS LLC.

  L.  **Waiver of Trial by Jury:** Both Parties waives trial by jury on any issue triable of right by jury.

  M.  **Attorney's fees:** Customer agrees it shall be liable for any and all attorney's fees incurred by IRMS LLC or IRMS LLC whether or not in a formal proceeding, including appeals, administrative actions or quasi judicial or quasi administrative actions where such fees are incurred by IRMS LLC or IRMS LLC as a consequence or related to the scope of this agreement or any addenda hereto.

  N.  **Authorization.** Each of the parties hereto represents and warrants on behalf of itself that it has full power and authority to enter into this Agreement; that the execution, delivery and performance of this Agreement has been duly authorized by all necessary corporate or partnership or other appropriate authorizing actions; that the execution, delivery and performance of this Agreement will not contravene any applicable by-law, corporate charter, partnership or joint venture agreement, law, regulation, order or judgment; that execution, delivery and performance of this Agreement will not contravene any provision or constitute a default under any other agreement, license or contract which such party is bound; and, that this Agreement is valid and enforceable in accordance with its terms.

  O.  **Counterparts.** This Agreement may be executed and delivered in counterparts, each of which shall be deemed an original.

  P.  **Drafting.** This Agreement has been drafted by IRMS LLC as a matter of convenience only and shall not be construed in favor of either party on that account. Each party acknowledges that it has had adequate opportunity to seek the services of independent counsel, accountants and/or other professionals prior to execution of this agreement and as such, each party acknowledges that they have full knowledge, authorization, comprehension and intent with respect to each and every provision of this agreement and any addenda hereto.

VI.  **AMENDMENTS**

  A.  AMENDMENTS.

    1.  Any enforceable change in rules, regulations, bylaws, statutes, ordinances or other policies or laws properly passed and published by any governing body of any government, quasi-government or private association to which IRMS LLC or IRMS LLC is a member or otherwise affected shall

automatically amend the provisions of this Agreement to the extent of the change that is published. IRMS LLC will make every good faith effort within its resources to assure that no such proposed rule infringes on the contractual rights of IRMS LLC or any of its customers or vendors.

2. IRMS LLC reserves the right to unilaterally amend this Agreement from time to time as reasonably required as exigencies of business dictate. Any party affected by such amendments shall have a period of fifteen (15) calendar days from the date the amendment was first put into effect to state objections and request renegotiation of terms. At all times unless otherwise stated, the amended terms of the agreement shall be in full force and effect. In the event the parties fail to reach agreement, either party may apply for arbitration under the rules of the American Arbitration Association. Both parties agree to submit any such dispute to binding arbitration and/or mediation as the circumstances suggest or require.

B. MODIFICATIONS. Except as otherwise provided herein, this Agreement may not be amended, altered or otherwise modified except in writing executed by all parties hereto.

C. ASSIGNMENTS: This Agreement may not be assigned by any ISR to any party or entity except upon written consent and permission of IRMS LLC which shall not be unreasonably withheld only in the event that the holders of equity and the management structure of the assignee are virtually identical to the original ISR. Transfers of equity or title that are strictly for estate tax purposes will be allowed. All other transfers shall be construed as prohibited Assignments.

## VII. TERM AND TERMINATION

A. TERM. The term of this Agreement shall begin on November 1st, 2017, and will continue for a period of five (5) years, provided however that IRMS may terminate this agreement anytime with or without cause.

B. RENEWAL. With respect to the end of each term of this agreement, unless ISR gives written notice by Certified Mail not later than three (3) months prior to the expiration of this agreement, this agreement shall automatically renew for one (1) additional year, subject to the then prevailing charges, rules and regulations of IRMS LLC.

C. EFFECT OF TERMINATION. Upon termination of this agreement, the ISR shall only be entitled to receive compensation for all installed units earned under this agreement only to the date of this termination in accordance with the payment schedule as set forth in **Exhibit B.**

## VIII. ENTIRE AGREEMENT

A. This document constitutes the entire agreement between IRMS LLC and ISR. It supersedes any oral or written prior or contemporaneous negotiations or representations between the parties.

## IX. AGREEMENT DATE

A. DATE OF COMMENCEMENT. It is mutually agreed to by all parties that the Date of Commencement of this Agreement shall commence as of 12/29/17.

Executed this 29 day of Dec, 2017 in agreement by all parties hereto to this Agreement

16

Initial

Initial

EFT000056

## Processing and Service Agreement with ISRs

| Indian River Merchant Services LLC (IRMS LLC) | Guarantor (Randy Nolte) EFT Services LLC |
|---|---|
| 22101 US HWY 19 North<br>Clearwater, Fl 33765<br><br>Phone: 1866-515-4767<br>Email: deven@irmsfl.net | 4801 S University Drive #303<br>Davie, FL 33328<br><br>Phone: 1888-324-1954<br>Email: randy@efte-solutions.com |
| BY: *[signature]*<br>Signature:<br>Official Capacity: President | BY: *[signature: Randy Nolte]*<br>Signature:<br>Official Capacity: Manager |
| Printed Name:<br>Deven Werling<br>Date: 12/29/17<br>Indian River Merchant Services LLC (IRMS LLC) | Printed Name<br>Randy Nolte<br>Date: 12/21/17<br>ISR: EFT Services LLC |

17

Initial *[signature]*   Initial *[signature]*

## Processing and Service Agreement with ISRs

Indian River Merchant Services LLC

### EXHIBIT A

PIN Based Transaction Pricing

1) Processing Costs:

    a. **Interchange:** IRMS will retain 100% of all interchange earned on all eligible transactions

    b. **Transaction Processing Fees:** IRMS will be paid a transaction processing fee in accordance with the pricing defined below. These fees will be deducted from Surcharge settlement to ISR and settled directly to IRMS via ACH.

    c. **Transaction Fee per Approved Transaction:** $ .15 (for each 12 month period and adjust if market allows)

    d. **Transaction Fee per Approved Emerging Market (includes POB Fee): $1.50**

    e. **Transaction Fee per Approved Cash ATM Transaction Fee: $ .05**

2) Minimums: ISR agrees to a minimum monthly transaction volume of 300,000 approved transactions. Should the ISR fail to meet the minimum during any month during the team of this agreement, IRMS LLC will calculate the average Interchange and exact Surcharge fees based on 250,000 approved transactions, subtract the Interchange and Surcharge amount of the actual number of approved transactions for the current period and deduct the resulting unmet minimum from ISR's surcharge funding. Notwithstanding the foregoing, if the monthly transaction volume derived from Emerging Markets drops by 50% of it's previous three (3) months average monthly volume, both parties agree the new minimum for all monthly transactions will be 175,000 transactions per month and the transaction volume basis for calculating the fees due to IRMS will be 125,000 transactions per month.

18

Initial

Initial

EFT000058