EXHIBIT "B"

## SERVICES AGREEMENT

This Services Agreement (the "**Agreement**") is made as of February 10, 2020 (the "**Effective Date**") by and between **Denovo Systems**, with a place of business at 1000 Ponce de Leon Avenue, Suite 2B, San Juan, Puerto Rico 00907 ("**Service Provider**"), and **One Pay Cloud LLC**, a Florida limited liability company, with a place of business at 11451 NW 36th Avenue, Miami, Florida 33167 ("**Exclusive Instance User**"), (each a "**Party**" and collectively, the "**Parties**").

WHEREAS, Service Provider has developed and provides certain software and services, including, without limitation, a web portal and mobile devices based applications, which provide Users and Merchants ("**End Users**") a System to manage the set up, management, maintenance connectivity and reporting of its card payment terminals, pin pad devices and/or vending machines ("**Terminals**") including: handling various operational aspects of the Terminal, setup, submission of transactions batches, receiving messages and notifications on various events related to the Terminal operation, as well as reviewing and tracking the transactions details, electronic copies of the receipts and customers signatures, and as needed connect it to third party vendors interesting to use such terminals, (collectively, the "**Services**"). The Services also offer a merchant the ability to offer its customers to digitally store receipts that were issued in its business, as well as offer various communication channels for the merchant to communicate with its customers (such as, but not limited to: text messages, emails, push notifications) regarding information and offers. Some Services may be accessed through the Exclusive Instance User links such as second level domain name like onepaycloud.com with option to create 3rd level domains like steam.onepaycloud.com etc. as well as SSL certificate which will be valid for 3rd level domains like *.onepaycloud.com (steam.onepaycloud.com) (the "**Exclusive Instance User Sites**") or through the iOS and Android mobile applications. The Services also include any other features, content, or applications offered from time-to-time by Exclusive Instance User in connection with the Site or the applications. (All of the foregoing is collectively the "**Systems**", which are owned by Service Provider).

WHEREAS, Exclusive Instance User desires a separate and independent access from Service provider to the STEAM management software and exclusive control of Dejavoo Point of Banking ATM terminal protocols (the "**Protocols**"), for which Service Provider has not obtained approval with any processor and for which Exclusive Instance User will be responsible to obtain the necessary approvals, along with separate and independent access to DeNovo Terminal reporting with SPIn-Proxy, and independent access to standard credit card and debit card processing and all other protocols available now or in the future on Service Provider's Systems (the "**Other Protocols**") on a non-exclusive basis.

WHEREAS, Exclusive Instance User is willing to pay for an exclusive use and maintenance of the Instance (defined below), exclusive use of the Protocols and non-exclusive independent use of the Other Protocols, as set forth in this Agreement.

NOW, THEREFORE, the Parties do hereby agree as follows:

1. **Set up of an Exclusive Instance of STEAM, limited DeNovo and SPIn Systems**. Subject to the terms of this Agreement, Service Provider hereby will set up for Exclusive Instance User (subject to payment of the Service Fee as set forth in section 2 below) an independent instance of the Systems and its associated intellectual property (collectively, the "**Software**").

MS  *[initials]*

2. **Exclusive use of Protocols**. Service Provider hereby also transfers to Exclusive Instance User all of Service Provider's right, title and interest and the certification responsibilities in and to the Protocols. Service Provider will no longer deploy the Protocols on its System, directly or indirectly. Exclusive Instance User hereby accepts the Protocols and acknowledges and agrees that it is solely liable for any and all uses of the Protocols by Exclusive Instance User or otherwise. Exclusive Instance User is obligated to ensure the legality and validity, accuracy and proper usage of the Protocols. Exclusive Instance User will approve and sign the Protocols before deploying it to Dejavoo terminals, solely through the Instance (defined below).

   a. **Hosting of Instance**. Exclusive Instance User will set and pay for its hosting facility. Service Provider will be responsible to install the Systems, Protocols and Other Protocols for Exclusive Instance User in the Exclusive Instance User hosting facility (the "**Instance**"). Service Provider will service the Instance under its maintenance agreement with Exclusive Instance User.

   b. **Updates**. The term "Updates" means upgrades, bug-fixes, new versions, new releases, enhancements or modifications to the Systems, Protocols or Other Protocols. In consideration of the Maintenance Fees (as defined below), Service Provider shall make any Updates it creates for the Systems or Other Protocols that are commercially available, available to Exclusive Instance User without additional cost in perpetuity (provided Exclusive Instance User is not in default under its obligations under this Agreement) and Service Provider shall install such Updates. Updates shall be deemed to be included in the purchase of the Instance under this Agreement, only if Maintenance Fees are paid by Exclusive Instance User.

   c. **Exclusive Instance User Updates**. Exclusive Instance User shall be permitted to direct Service Provider's development team to modify and develop the Instance and Updates for the Instance, paid on an hourly basis at $50 per hour on a work for hire basis. Service Provider's failure to develop a new feature or new function will not be deemed a default by Service Provider in providing the Maintenance Services. Upon Exclusive Instance User's request, Service Provider shall provide Exclusive Instance User with a copy of the Object code for the Instance and all Updates. Exclusive Instance User shall make any Updates it creates for the Systems available to Service Provider without cost. Exclusive Instance User shall be entitled to modify and develop Service Provider Updates. Service Provider shall retain all ownership, right, title and interest in and to its Updates, and Exclusive Instance User shall not obtain any further or additional rights or interests in or to the Service Provider Updates.

   d. **Exclusivity**. Exclusive Instance User shall have the right to: (i) utilize the licensed Systems and Other Protocols, on a non-exclusive basis, for its merchant boarding, updating and reporting, and (ii) the Protocols in a binary, signed format on an exclusive basis.

   e. **Sale and Transfer Restriction.** Exclusive Instance User shall not have the right to sell or transfer the Instance, except as provided in Section 17.

   f. **Existing users of Protocols.** Upon execution of this Agreement Service Provider will notify all existing users of the Protocols of the existence of Exclusive Instance User's system for the Protocols, and they will have 30 days to contact Exclusive Instance User for the utilization of the Protocols as Service Provider will no longer support or provide access to the Protocols after the 30 days.

MS *[initials]*

3. **Service Fee**. Exclusive Instance User shall pay to Service Provider a Service fee ("**Service Fee**") of $3,125,000 as follows: (i) $1,000,000 at execution, which is non-refundable, and (ii) $118,055.56 each following month for 18 months, which each Service Provider agrees is, and shall be deemed to be, full and complete consideration in exchange for Service Provider's service of the Instance to Exclusive Instance User. The Parties acknowledge and agree that if this Agreement is terminated by Exclusive Instance User pursuant to Section 12(d) and at the time of termination Service Provider has received less than $1,500,000 in Service Fees, then Exclusive Instance User agrees to pay to Service Provider on the date of termination an amount equal to the difference between $1,500,000 and the amount of Service Fees actually received by Service Provider on such termination date. Except as otherwise provided herein, any amount of the Service Fee that is paid is non-refundable.

4. **Maintenance Fees**. Exclusive Instance User shall pay to Service Provider a monthly maintenance fee of $30,000 each a month (the "**Maintenance Fee**"), in addition to the Service Fee. Payment will be made via wire transfer to Service Provider designated bank accounts. In exchange for the Maintenance Fee, Service Provider shall provide: (i) 24/7 technical support (including integration) for all Terminals on the Instance, and (ii) 20 hours per month of custom development work for the Instance, with any additional development work paid at $50 per hour, all on a work for hire basis; and (iii) Updates pursuant to Section 2(b) (the "**Maintenance Services**"). If Exclusive Instance User fails to pay the Maintenance Fee after notice of default and opportunity to cure as provided in Section 12(b) below, then Service Provider may suspend Exclusive Instance User's access to the Systems and the Maintenance Services. Provided that Exclusive Instance User continues to pay the Service Fee, a non-payment of the Maintenance Fee will not serve as a default in payment of the Service Fee. If Service Provider fails to provide the Maintenance Services, for any reason other than Exclusive Instance User's default, after notice of default and opportunity to cure as provided in Section 12(b) below, Exclusive Instance User shall stop paying the Maintenance Fee and either: (i) be entitled to the uncompiled **SYSTEMS only** source code for the Instance modules only and all Updates for no additional fee, or (iii) charge Service Provider for its costs of obtaining such Maintenance Service from another source. To secure such source code only in case of uncured failure to service, after a full payment of the Service Fees, Service Provider will put the Instance and Updates source code in escrow, which will be paid by Exclusive Instance User, with the source code to be released to Exclusive Instance User upon Exclusive Instance User's notifying the escrow agent that: (i) Exclusive Instance User has purchased a license for it as per Section 5(a) below, or (ii) Service Provider has failed to provide the Maintenance Services, for any reason other than Exclusive Instance User's default, after notice of default and opportunity to cure.

5. **Ownership of Intellectual Property**. Service Provider shall retain all ownership, right, title and interest in and to its Systems and any underlying software, patents, copyrights, trademarks, database rights, service marks, logos and trade names worldwide ("**Service Provider Intellectual Property**"), subject to the rights provided to Exclusive Instance User by this Agreement. Service Provider reserves all rights not expressly granted by this Agreement. Exclusive Instance User shall use the Service Provider Intellectual Property only as expressly permitted by this Agreement, and, except as expressly permitted by this Agreement, shall not alter sublicense, modify, transfer, rent, lease, sell, display, distribute or copy originals or copies of the Service Provider Intellectual Property in any way, or act or permit action in any way that would impair Service Provider's rights in its Service Provider Intellectual Property. In addition, Exclusive Instance User will not reverse engineer, unencrypt, disassemble, decompile or otherwise translate the Service Provider Intellectual Property or allow anyone else to do it. Exclusive Instance User acknowledges that Exclusive Instance User's use of the Service Provider

*MS* *[signature]*

Intellectual Property shall not create in Exclusive Instance User or any other person any ownership, right, title or interest in or to such Service Provider Intellectual Property. Exclusive Instance User shall not contest the validity or enforceability of the Service Provider Intellectual Property or Service Provider's ownership thereof. Exclusive Instance User also acknowledges that any rights or goodwill that may accrue to Exclusive Instance User from the use of the Service Provider Intellectual Property shall remain the sole and separate property of Service Provider. Service Provider shall be solely responsible to enforce and protect the Service Provider Intellectual Property. Exclusive Instance User shall comply with industry regulations and shall indemnify and hold Service Provider, its affiliates, and their respective officers, directors, employees, and representatives harmless from and against any claims, liabilities, damages, fines or expenses (including attorneys' fees) in connection with the Exclusive Instance User's (i) utilization of the Protocols, and (ii) usage or implementation of the Instance.

      a.    **Option to Acquire a License with Instance Source Code.** After payment of the Service Fee in full, and for a period of twelve (12) months thereafter, Exclusive Instance User shall have the right to acquire a license for the uncompiled **SYSTEMS only** source code for the Instance modules only and all Updates (the "License") for the additional sum of $2,000,000. The License shall be a limited, perpetual, non-exclusive (except shall have the right to: (i) utilize the licensed Systems and Other Protocols, on a non-exclusive basis, for its merchant boarding, updating and reporting, and (ii) the Protocols in a binary, signed format on an exclusive basis), non-transferable (except that Exclusive Instance User may assign or sublicense its rights under the License: (a) to third parties as part of its business to the extent necessary to operate its business; or (b) to any person, firm or corporation that acquires all or substantially all of the assets or business of Exclusive Instance User, provided that Service Provider shall be notified in writing thirty (30) days before the transfer date and provide its written consent, such consent not to be unreasonably withheld, and any sublicensee or assignee agrees in writing to be bound by all of the terms and conditions of the License), fully paid, last license. Exclusive Instance User shall be entitled to further modify and develop the source code, but shall not thereby obtain any further or additional rights or interest in the licensed source code. Exclusive Instance User's use of the uncompiled source code will remain subject to all of the restrictions applicable to the Instance, including without limitation that: (i) the Protocols will be provided **ONLY** in **binary code** format; (ii) the only hardware that can be used with the Instance shall be Service Provider's hardware; and (iii) any transfer of the Instance or License to any POS hardware manufacturer requires Service Provider's prior written consent, which consent shall not be unreasonably withheld or delayed.

      b.    **Injunctive Relief.** Exclusive Instance User acknowledges that money damages may not be an adequate remedy for any breach or violation of any requirement set forth in this Section 5 and that any such breach or violation may leave Service Provider without an adequate remedy at law. Exclusive Instance User therefore agrees and acknowledges that any such breach or violation or threatened breach or violation will cause irreparable harm to Service Provider and that, in addition to any other remedies that may be available, in law, in equity or otherwise, Service Provider shall be entitled to seek both temporary and permanent injunctive relief against the threatened breach or violation of this Section 5 or the continuation of any such breach or violation, without the necessity of proving actual damages or posting bond or other security.

6.    **Exclusive Instance User's Warranties and Indemnification.** Exclusive Instance User warrants to Service Provider that: (i) Exclusive Instance User has the power and

*[handwritten initials: MS MM]*

authority to enter into this Agreement, and (ii) that the performance of this Agreement will not violate any other agreement or obligations to which Exclusive Instance User is subject.

Exclusive Instance User assumes all risk related to the Exclusive Instance User's use, quality and performance of the Instance, including the Protocols set up in it. If the Instance is used in any form that is not in approval, compliance with any and all network, bank, or card association rules and regulations, or any and all applicable laws, rules, regulations and ordinances, and governmental requirements, Exclusive Instance User shall assume full and complete responsibility as well as the full cost of all necessary servicing, repair, correction or penalties.

Exclusive Instance User shall indemnify, defend and hold harmless Service Provider and its current and former members, directors, officers, employees and agents and their respective successors, heirs and assigns (collectively, the "**Indemnitees**") from and against any claims, liabilities, costs, expenses, damages, deficiencies, losses or obligations of any kind or nature (including reasonable attorneys' fees and other costs and expenses of litigation) by or owed to a third party, based upon, arising out of, or otherwise relating to the activities of Exclusive Instance User (and any sublicensees) under this Agreement, including any cause of action relating to any product, process, or service made, used, sold or performed pursuant to any right or license granted under this Agreement including, without limitation, the use or misuse of DeNovo or Dejavoo terminals (collectively, the "**Claims**"); provided, however that Exclusive Instance User's indemnification obligations hereunder shall not apply to any Claims to the extent that it is attributable to the gross negligence or willful misconduct of any Indemnitee.

Exclusive Instance User shall, at its own expense, provide attorneys reasonably acceptable to Service Provider to defend against any actions brought or filed against any Indemnitee hereunder with respect to the subject of indemnity contained herein, whether or not such actions are rightfully brought. Any Indemnitee seeking indemnification hereunder shall promptly notify Exclusive Instance User of such Claim; provided further that any failure of or delay in such notification shall not affect Exclusive Instance User's indemnification obligation unless and to the extent such failure or delay is materially prejudicial to Exclusive Instance User. The Indemnitees shall provide Exclusive Instance User, at Exclusive Instance User's expense, with reasonable assistance and full information with respect to such Claim and give Exclusive Instance User sole control of the defense of any Claim. Neither Exclusive Instance User nor Indemnitee shall settle any Claim without the prior written consent of the other, which consent shall not be unreasonably withheld.

7. **Service Provider's Warranties and Indemnification**. Service Provider warrants to Exclusive Instance User that: (i) Service Provider will ensure that the Systems and Other Protocols comply with all applicable laws, rules, regulations and ordinances, and governmental requirements, (ii) Service Provider has the power and authority to enter into this Agreement, and (ii) the performance of this Agreement will not violate any other agreement or obligations to which Service Provider is subject.

Service Provider has not received any threat, demand or notice of claim from any person asserting that the use of the Service Provider Intellectual Property would constitute any infringement, interference, violation, misappropriation, breach or wrongful use of the rights of any other person (collectively, "**Infringement Claims**"). Service Provider may satisfy its obligations with respect to any Infringement Claims, at Service Provider's sole election, by: (i) replacing any infringing elements with non-infringing elements of substantially equivalent functional and performance capability; (ii) modifying any infringing elements to avoid the infringement without

MS *[initials]*

substantially eliminating the functional and performance capabilities; or (iii) obtaining a license for use of the infringing elements.

Service Provider shall indemnify and hold Exclusive Instance User and its subsidiaries, members, directors, officers, employees and agents and their respective successors, heirs and assigns harmless from and against any and all claims, liabilities, costs, expenses, damages, deficiencies, losses or obligations of any kind or nature (including reasonable attorneys' fees and other costs and expenses of litigation) by or owed to a third party, based upon, arising out of, or otherwise relating to the activities of Service Provider or Indemnitees under this Agreement, or any material breach or default in the performance or observance by Service Provider of this Agreement; provided, however that Service Provider's indemnification obligations hereunder shall not apply to any claims to the extent that it is attributable to the gross negligence or willful misconduct of Exclusive Instance User.

8. **Limitation and Disclaimer of Warranties**. Except as expressly specified herein, Service Provider does not warrant that the Instance or Protocols will meet any particular standards or requirements or approvals of Exclusive Instance User processors, including those of the card brands, or that Exclusive Instance User's or any end user's use of the Instance will be uninterrupted or error free. EXCEPT AS EXPRESSLY SPECIFIED HEREIN, THE INSTANCE AND THE SERVICES ARE DELIVERED AND LICENSED "AS IS" WITH ALL FAULTS AND WITHOUT WARRANTY OF ANY KIND. EXCEPT AS EXPRESSLY SPECIFIED HEREIN, LICENSOR HEREBY DISCLAIMS ALL WARRANTIES AND CONDITIONS WITH RESPECT TO THE INSTANCE AND THE SERVICES, EITHER EXPRESS OR IMPLIED, BY STATUTE OR OTHERWISE, INCLUDING IMPLIED WARRANTIES AND/OR CONDITIONS OF MERCHANTABILITY, OF SATISFACTORY QUALITY, OF FITNESS FOR A PARTICULAR PURPOSE, OF ACCURACY, OF QUIET ENJOYMENT, AND NON-INFRINGEMENT OF THIRD PARTY RIGHTS. EXCEPT AS EXPRESSLY SPECIFIED HEREIN, LICENSOR DOES NOT WARRANT THAT THE OPERATION OF THE INSTANCE OR THE LICENSOR/DEJAVOO TERMINALS WILL BE UNINTERRUPTED OR ERROR-FREE, OR THAT DEFECTS IN THE INSTANCE WILL BE FIXED. EXCEPT AS EXPRESSLY SPECIFIED HEREIN, NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY LICENSOR OR ITS AUTHORIZED REPRESENTATIVES SHALL CREATE A WARRANTY.

9. **Limitation of Liability**. NEITHER PARTY SHALL BE LIABLE HEREUNDER FOR CONSEQUENTIAL, SPECIAL, INCIDENTAL, PUNITIVE, EXEMPLARY OR INDIRECT DAMAGES, LOSS OF GOODWILL OR REPUTATION, LOST REVENUES, LOST PROFITS OR OTHER BUSINESS INTERRUPTION DAMAGES, BY STATUTE, IN TORT OR CONTRACT, UNDER ANY INDEMNITY PROVISION OR OTHERWISE, WHETHER ADVISED OF THE POSSIBILITY OF SUCH LOSS OR DAMAGE AND HOWSOEVER INCURRED. IN NO EVENT SHALL A PARTY'S AGGREGATE LIABILITY ARISING FROM OR RELATED TO THIS AGREEMENT (EXCLUDING THIRD PARTY INDEMNITY OBLIGATIONS), OR USE OF THE INSTANCE, INCLUDING ANY CAUSE OF ACTION BASED ON WARRANTY, CONTRACT, TORT, STRICT LIABILITY, INFRINGEMENT OF THIRD PARTY RIGHTS OR MISAPPROPRIATION OF INTELLECTUAL PROPERTY, OR USE OF THE INTELLECTUAL PROPERTIES IN A NON COMPLIANT MANNER EXCEED THE AMOUNT OF $100. The foregoing limitations will apply even if the above stated remedy fails of its essential purpose.

10. **Confidentiality**.

a. During the term of this Agreement, each Party may have access to certain confidential and proprietary information of the other Party (collectively, the "Confidential

Information"). Confidential Information may include, but is not limited to: (i) the Service Provider Intellectual Property and all Updates thereto; (ii) technical and user documentation; (iii) customer lists, prospect lists, existing agreements with vendors and business partners of either Party, and pricing proposals; (iv) marketing, sales, financial and other business information, data and plans; (v) research and development information; (vi) formulas, methods, know-how, processes, designs, new products, performance tests, product evaluations, reported problems with any software or services; (vii) information concerning the customers, potential customers, employees and service providers of either Party; and, (viii) this Agreement and the contents thereof. The disclosing Party shall retain all right, title and interest in and to all of its Confidential Information, including but not limited to any intellectual property rights embodied therein.

    b.    Notwithstanding the foregoing, Confidential Information shall not include any information that the receiving Party can establish: (i) is or subsequently becomes publicly available through no act or omission of the receiving Party; (ii) was in the receiving Party's lawful possession prior to disclosure of such information; (iii) is subsequently disclosed to receiving Party by a third party who is not in breach of an obligation of confidentiality; (iv) is independently developed by the receiving Party without the use or benefit of the Confidential Information; or (v) is required to be disclosed under a court order or a valid subpoena, provided that the receiving Party promptly notifies the disclosing Party and provides the disclosing party an opportunity to seek an appropriate protective order. In no event shall the Service Provider Intellectual Property be considered not to be Confidential Information or to be part of the public domain.

    c.    Confidential Information shall be used solely for each Party's performance under this Agreement and the exercise of its rights hereunder and shall not be disclosed to any third party. Each Party shall take reasonable precautions, at least as great as the precautions it takes to protect its own confidential information but, in any event, commercially reasonable precautions, to maintain the Confidential Information in strict confidence. Further, in consideration of the disclosure of Confidential Information, and other good and valuable considerations, the receipt and sufficiency of which are acknowledged, the Party receiving the Confidential Information agrees to: (i) not copy, reproduce, engineer or reverse engineer, in whole or any part, of any Confidential Information without written consent of disclosing Party; (b) disclose Confidential Information only to its employees that need to know the information for the performance of their duties; (c) not disclose Confidential Information to persons outside of itself without written consent of the providing Party unless such disclosure is required pursuant to applicable laws, regulation or court order, provided that the providing party is given reasonable notice of such law or order and an opportunity to attempt to preclude or limit such production; and, (d) return all Confidential Information, including any copies or other records, to the providing Party upon receipt of a written request from the providing Party.

    d.    The receiving Party acknowledges and agrees that Confidential Information is proprietary to and a valuable trade secret of the disclosing Party and that any disclosure or unauthorized use of any Confidential Information will cause irreparable harm and loss to the disclosing Party. In the event of any breach of this Agreement by a receiving Party, the disclosing Party shall be entitled to obtain from any court of competent jurisdiction, without requirement or bond or other security, preliminary and permanent injunctive relief as well as an equitable accounting of all profits or benefits arising from such breach, which rights and remedies shall be cumulative and in addition to any other rights or remedies at law or in equity to which the disclosing party may be entitled.

11.    **Privacy.**

*[initials: MS MB]*

a. Each Party shall comply with all applicable laws, regulations and guidelines (collectively, "**Privacy Laws**") governing consumer privacy in fulfilling its obligations hereunder.

b. Each Party will: (i) obtain and maintain all appropriate registrations and consents under the Privacy Laws in order to allow that party to perform its obligations under this Agreement; (ii) process consumer data in accordance with the Privacy Laws; and (iii) use its reasonable efforts to make sure that no act or omission by it, its employees, contractors or agents results in a breach of the obligations of either Party under the Privacy Laws.

c. Exclusive Instance User will ensure that it obtains all necessary consents from the relevant individuals before collecting, processing, storing or transferring any consumer data to Exclusive Instance User or within the Service Provider Intellectual Property.

12. **Term and Termination.**

a. Unless this Agreement be sooner terminated as provided herein, it shall remain in force for so long as Exclusive Instance User is paying the Service Fees or Maintenance Fees to Service Provider.

b. Either Party shall have the right to terminate this Agreement upon the material breach of this Agreement by the other Party, if such breach is not cured within thirty (30) days after receiving written notice thereof in accordance with the notice requirements of Section 14.

c. After payment in full of the Service Fee, Service Provider shall not have the right to terminate this Agreement.

13. **Post-Termination or Expiration Rights and Obligations.** In the event of termination of this Agreement by Service Provider pursuant to Section 12(b) above, Exclusive Instance User will immediately cease utilizing the Instance, and will immediately return to Service Provider or destroy all copies of the materials embodying the Instance, and remove the Instance and/or any applicable software from all media in Exclusive Instance User's custody, possession or control. After the termination or expiration of this Agreement, all rights and obligations of the Parties hereunder will cease except the rights of a Party with respect to a breach of this Agreement; and (b) the rights and obligations contained in Sections 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 15, 16, 18, 19 and 21. Termination shall not relieve Exclusive Instance User from paying all amounts accrued under this Agreement prior to termination and shall not limit Service Provider from pursuing any other available remedies.

14. **Notice.** Any notice relating to this Agreement shall be in writing, shall be deemed given when actually delivered or refused, and shall be sent by nationally recognized prepaid overnight courier providing proof of delivery or refusal, to the addresses set forth in the first paragraph of this Agreement, as same may be changed by providing written notice to the other Party.

15. **Severability.** If any provision of this Agreement is declared invalid or unenforceable, such provision shall be deemed modified to the extent necessary and possible to render it valid and enforceable and to accomplish the original intent of the Parties. In any event,

MS MR

the unenforceability or invalidity of any provision shall not affect any other provision of this Agreement, and this Agreement shall continue in full force and effect, and be construed and enforced, as if such provision had not been included, or had been modified as above provided, as the case may be.

16. **Waiver:** No failure by any party to insist upon the strict performance of any covenant, duty, agreement or condition of this Agreement, or to exercise any right or remedy consequent upon a breach thereof shall constitute a waiver of any such breach or of any other covenant, agreement, term or condition.

17. **Assignability.** Exclusive Instance User may assign or sublicense the Instance: (a) to third parties as part of its business to the extent necessary to operate its business; or (b) to any person, firm or corporation that acquires all or substantially all of the assets or business of Exclusive Instance User, provided that Service Provider shall be notified in writing thirty (30) days before the transfer date and provide its written consent, such consent not to be unreasonably withheld, and any sublicensee or assignee agrees in writing to be bound by all of the terms and conditions of this Agreement. Service Provider may assign, sell or otherwise transfer any of its rights or interest in this Agreement, whether by operation of law or otherwise, without consent of Exclusive Instance User upon thirty (30) days prior written notice. Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of the Parties to this Agreement and their permitted successors and assigns.

18. **Relationship:** Nothing contained herein shall be construed to imply a joint venture, partnership or principal-agent relationship between Service Provider and Exclusive Instance User, and neither Party shall have the right, power or authority to obligate or bind the other in any manner whatsoever, except as otherwise specifically agreed to in writing.

19. **Applicable Law and Venue.** This Agreement shall be governed exclusively by the law of the State of New York, without reference to its conflicts of law principles. This Agreement shall be construed without the aid of any canon or rule of law requiring interpretation against the party drafting the Agreement, or the portions of the Agreement in question, it being agreed that all Parties hereto have participated in the preparation of this Agreement. Each Party agrees that venue for any action under or related to this Agreement shall be exclusively in the state or federal courts located in Miami-Dade County, Florida, and the Parties each submit to the exclusive jurisdiction of such courts and waive any claim that same is an inconvenient forum. The Party prevailing in any action under or related to this Agreement shall be entitled, in addition to such other relief as may be granted, to recover from non-prevailing Party its reasonable attorneys' fees and costs (at all tribunals and levels, including on appeal, in mediation or bankruptcy, and pre-trial or post trial), including those associated with establishing such entitlement and the amount thereof. Neither Party shall be liable to the other for any indirect, incidental, consequential, punitive, special or exemplary damages, (even if that Party has been advised of the possibility of such damages), arising from any provision of this Agreement (such as, but not limited to, loss of revenue or anticipated profits or lost business); provided however, that the limitations set forth in this Section shall not apply to or in any way limit the third party indemnity obligations under this Agreement. THE PARTIES EACH HEREBY IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

20. **Counterparts and Execution.** This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any of the Parties hereto may execute this Agreement by signing any such counterpart. Signatures

*MS  MB* (initials)

on this Agreement may be made by electronic means, and proof of execution may be transmitted by electronic means. A fully executed electronic version of this Agreement shall be treated as an original in all respects.

21. **Entire Agreement and Amendment**. This Agreement comprises the complete and final expression of the rights, obligations, duties and undertakings of the Parties, and sets forth all consideration, covenants, understandings and inducements, pertaining to the Instance and the Service Provider Intellectual Property. This Agreement may be modified only in a writing signed by the duly authorized representatives of both Parties.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives.

**One Pay Cloud LLC**

By: _____
Name: Michael Shvartsman
Title: Manager

**Denovo Systems**

By: _____
Name: Tony Bonuso
Title: president & CEO

## SIDE LETTER TO SERVICES AGREEMENT

WHEREAS, **Denovo Systems** ("**Service Provider**"), and **One Pay Cloud LLC** ("**Exclusive Instance User**") have entered into that certain Service Agreement of even date herewith ("**Service Agreement**"); and,

WHEREAS, any capitalized terms not defined herein shall have the same meaning ascribed to it in the Service Agreement; and,

WHEREAS, Exclusive Instance User possesses the know-how and ability to use the Protocols in a compliant manner in the Market (as defined below); and,

WHEREAS, Service Provider and Exclusive Instance User desire to set forth certain additional understandings.

Now, Therefore, Service Provider and Exclusive Instance User further agree as follows:

1. Exclusive Instance User intends to use the Instance in the market for CBD and dispensary related products (the "**Market**").

2. The exclusivity provided to Exclusive Instance User in the Service Agreement is strictly for the Market through the use of the Protocols, and does not include: (i) Any pin based script ATM products outside of the Market; or (ii) Any Pin Based Debit transaction outside of the Market, or (iii) Any Credit or other electronic transaction outside of the Market, or (iv) any proven bank sponsored Market opportunity. To be a 'proven bank sponsored Market opportunity', a third party must provide Service Provider with letters from its bank sponsor and its transaction processor unequivocally agreeing to utilize the System, Protocols or Other Protocols in the Market, and Service Provider must be able to directly contact the bank sponsor and the transaction processor to validate the authenticity of the letters and provide Exclusive Instance User with proof of such validation.

3. If Service Provider or Exclusive Instance User identifies any unapproved Reseller of the System or Protocols in the Market, then within fourteen (14) calendar days of being made aware of such use, Service Provider shall: (i) terminate such Reseller's ability to board new clients for the System or Protocols in the Market; and (ii) if the unapproved Reseller is a new client of Service Provider after the date of this Agreement, Service Provider shall terminate such Reseller's access to and use of the System or Protocols in the Market. If Service Provider fails to terminate an unapproved Reseller as provided above, then: (i) Exclusive Instance User shall be entitled to deduct the sum of: (a) the number of Reseller transactions using the Protocols in the Market on the Service Provider system, multiplied by (b) the amount Exclusive Instance User is charging its clients for such transactions. If the unapproved Reseller continues to use the Protocols in the Market for more than 30 days after Service Provider being made aware of such

One Pay Cloud LLC
11451 NW 36th Avenue
Miami, FL 33167

MS. /M

use, Exclusive Instance User shall be entitled, as its sole and exclusive remedy, to the uncompiled **SYSTEMS only** source code for the Instance modules only and all Updates for no additional fee, provided that Exclusive Instance User shall continue to pay the Service Fees and Maintenance Fees, and Service Provider shall continue to provide support and transition assistance, for such time as Exclusive Instance User requires support and transition assistance from Service Provider to train Exclusive Instance User's developers on the System, Protocols and Instance. Upon completion of the transition, the Agreement shall be deemed terminated and neither party shall owe any further obligations to the other party.

4. If the federal laws and regulations are changed to permit the acceptance of electronic payments in the Market, then Exclusive Instance User may cancel the Service Agreement upon written notice to Service Provider.

IN WITNESS WHEREOF, the Parties have caused this Side Letter to Services Agreement to be executed by their duly authorized representatives.

**One Pay Cloud LLC**

By: _____
Name: Michael Shvartsman
Title: Manager

**Denovo Systems**

By: _____
Name: Morry Zonuel
Title: president & CEO